IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
OCT 1 6 2019
BY DEPUTY _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:19-CR-56 <br> JUDGE JCB/KNM |
| ███████████████ <br> PAMELA SUE JENNINGS (02) | § § § | UNDER SEAL |

### INDICTMENT

4:19mj1984

THE UNITED STATES GRAND JURY CHARGES:

United States Courts
Southern District of Texas
FILED
*October 22, 2019*
David J. Bradley, Clerk of Court

### General Allegations

At all times relevant to this Indictment:

Defendants

1. ███████████████ resided in or around Sherman, Texas, within the Eastern District of Texas.

2. **Pamela Sue Jennings** resided in or around Houston, Texas, within the Southern District of Texas.

Financial Institutions

3. Farmers State Bank was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Center, Texas, within the Eastern District of Texas.

4. Amegy Bank was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Houston, Texas, within the Southern District of Texas.

5. JPMorgan Chase Bank, N.A. (JPMorgan Chase), was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in New York, New York, within the Southern District of New York.

6. Wells Fargo Bank, N.A. (Wells Fargo), was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Sioux Falls, South Dakota, within the District of South Dakota.

7. BTH Bank, N.A. (BTH), was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Quitman, Texas, within the Eastern District of Texas.

8. Integrity Bank, SSB (Integrity), was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Houston, Texas, within the Southern District of Texas.

9. Branch Banking and Trust Corporation (BB&T) was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Winston-Salem, North Carolina, within the Middle District of North Carolina.

10. Hanmi Bank was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Los Angeles, California, within the Central District of California.

11. Capital One, N.A. (Capital One), was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in McLean, Virginia, within the Eastern District of Virginia.

Terminology

12. Romance scams target persons looking for romantic partners or friendship on dating websites and other social media platforms. The scammers may create profiles using fictitious or fake names, locations, images, and personas, allowing the scammers to cultivate relationships with prospective romance scam victims. Victims may be convinced to provide money or gifts to the scammers or may be asked to conduct financial transactions on behalf of the scammers.

## COUNT 1

<u>Violation</u>: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money Laundering)

1. The General Allegations section of this indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or about February 2016, and continuing through in or about February 2019, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants, ▮▮▮▮▮▮▮▮▮▮ and **Pamela Sue Jennings**, along with others, both known and unknown to the Grand Jury, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957, that is:

    a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity,

   that is, wire fraud, a violation of 18 U.S.C. § 1343; mail fraud, a violation of 18 U.S.C. § 1341; and bank fraud, a violation of 18 U.S.C. § 1344(2), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

 b. to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds from a place in the United States to a place outside the United States, knowing that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that such transportation was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, wire fraud, a violation of 18 U.S.C. § 1343; mail fraud, a violation of 18 U.S.C. § 1341; and bank fraud, a violation of 18 U.S.C. § 1344(2), in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

 c. to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting

interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, wire fraud, a violation of 18 U.S.C. § 1343; mail fraud, a violation of 18 U.S.C. § 1341; and bank fraud, a violation of 18 U.S.C. § 1344(2), in violation of 18 U.S.C. § 1957.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully and unjustly enrich themselves by obtaining fraud proceeds from victims.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. To achieve the goals of the conspiracy, the defendants and their co-conspirators would identify bank accounts into which they would fraudulently induce a victim to deposit funds from a romance scam or other fraudulent scheme.

5. The defendants and their co-conspirators (i) selected bank accounts that had previously been opened in order to receive fraudulently-obtained funds, which could receive the fraudulently-obtained funds; (ii) requested that a co-conspirator provide the account information for a bank account, which could receive the fraudulently-obtained funds; or (iii) caused a bank account or money service account to be opened, which could

Indictment – Page 5

receive the fraudulently-obtained funds.

    a. For a bank account that was to be opened, the defendants would open or cause to be opened a bank account, which would be accomplished through use of false or fraudulent pretenses, representations, and promises, and concealment of material facts.

    b. For a bank account opened in a business name, the defendants would file, or would cause to be filed, false and fraudulent documents in county government offices.

6. The defendants would send their co-conspirators account information for the bank accounts that could be used to receive fraudulently-obtained funds. For such accounts, the defendants would, at a minimum, send the account numbers and the routing numbers.

7. The defendants would come to an agreement with their co-conspirators regarding the percentage of fraudulently-obtained funds that the defendants would receive for their receiving and laundering services.

8. The defendants or their coconspirators, would, through false or fraudulent pretenses, representations, and promises, and concealment of material facts, persuade a victim to deposit, wire, or transfer funds into a bank account or to mail funds to a designated address.

9. The defendants and their co-conspirators would also make false and fraudulent statements, representations, and promises, and conceal material facts, in order to avoid discovery of the fraudulent nature of the deposit, wire, or transfer.

10. The defendants and their co-conspirators would withdraw, and attempt to withdraw, the fraudulently-obtained funds from a bank account, including through cash withdrawals, wire transfers, teller transfers, check cashing, and deposits into other accounts used by or under the control of defendants and other co-conspirators before the victims became aware of the fraudulent nature of the transactions, so as to obtain the money and so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

11. When a bank would question the source of the funds or nature of a transaction, the defendants would lie and make material omissions about their ownership of and entitlement to the funds, or the source of the funds, so as to obtain the money and so as to avoid detection and conceal the fact that the funds were fraudulently obtained from a victim.

## Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

12. On or about February 26, 2016, a co-conspirator caused victim P.M. to wire $32,300 from her Farmers State Bank account to **Pamela Sue Jennings's** Amegy Bank account held in the name of her company, Continental Cosmetics.

13. On or about February 29, 2016, **Pamela Sue Jennings** received $32,300 from victim P.M.

14. On the same day, **Pamela Sue Jennings** received $6,300 from victim P.O.

15. On or about March 1, 2016, **Pamela Sue Jennings** wired $39,000 to a co-conspirator's foreign bank account.

16. On or about March 25, 2016, a co-conspirator caused victim P.M. to wire $200,000 from her BTH account to **Pamela Sue Jennings's** Amegy Bank account held in the name of her company, Continental Cosmetics.

17. On or about March 30, 2016, **Pamela Sue Jennings** wired $70,000 to a co-conspirator's foreign bank account.

18. On or about April 1, 2016, **Pamela Sue Jennings** wired $80,000 to a co-conspirator's foreign bank account.

19. On or about April 4, 2016, **Pamela Sue Jennings** wired $45,000 to a co-conspirator's foreign bank account.

20. On or about June 1, 2016, a co-conspirator attempted to persuade victim P.M. to wire $125,000 from her BTH account to ▓▓▓ JPMorgan Chase account held in the name of her company, H & B Fashions.

21. On or about June 6, 2016, a co-conspirator caused victim P.M. to wire $125,000 from her BTH account to ▓▓▓ JPMorgan Chase account held in the name of her company, H & B Fashions.

22. On or about June 7, 2016, ▓▓▓ wired $42,000 to a co-conspirator's foreign bank account.

23. On the same day, ▓▓▓ withdrew a $40,000 cashier's check from her JPMorgan Chase account.

24. On or about June 8, 2016, ███████████ deposited the $40,000 cashier's check into a Wells Fargo account held in her name.

25. On or about June 10, 2016, ███████████ wired $41,000 to a co-conspirator's foreign bank account.

26. On or about June 20, 2016, ███████████ wired $36,500 to a co-conspirator's foreign bank account.

27. On or about July 14, 2016, a co-conspirator caused victim P.M. to wire $65,000 from her BTH account to **Pamela Sue Jennings's** BB&T account held in the name of her company, Continental Cosmetics.

28. On or about July 19, 2016, **Pamela Sue Jennings** wired $30,000 to a co-conspirator's foreign bank account.

29. On or about July 20, 2016, **Pamela Sue Jennings** wired $30,000 to a co-conspirator's foreign bank account.

30. In August 2016, **Pamela Sue Jennings** made false and fraudulent representations to BB&T to avoid detection and conceal the fact that the funds were fraudulently obtained from a victim.

31. On or about December 14, 2016, a co-conspirator caused victim P.M. to wire $65,000 from her BTH account to ███████████ BB&T account held in the name of her company, JH Mineral Surveying.

32. On or about December 19, 2016, ███████████ wired $48,600 to a co-conspirator's foreign bank account.

33. On the same day, ▮▮▮▮▮ wired $58,600 to a co-conspirator's foreign bank account.

34. On or about February 8, 2017, **Pamela Sue Jennings** provided a false and fraudulent invoice to Hanmi Bank to avoid detection and conceal the fact that the funds were fraudulently obtained from a victim.

35. On or about May 21, 2018, a co-conspirator caused victim P.M. to mail a $50,000 cashier's check to ▮▮▮▮▮

36. On or about May 24, 2018, a co-conspirator caused victim P.M. to mail a $50,000 cashier's check to ▮▮▮▮▮

37. On or about August 8, 2018, a co-conspirator caused victim P.M. to mail a $100,000 cashier's check to ▮▮▮▮▮

38. On or about August 9, 2018, ▮▮▮▮▮ deposited the cashier's check into her Capital One account.

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 982(a)(1)

1. The allegations contained in Count 1 are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2. Upon conviction of any violation of 18 U.S.C. §§ 1956 or 1957, the defendants, ████████████ and **Pamela Sue Jennings** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3. The property which is subject to forfeiture, includes but is not limited to the following:

   Cash Proceeds

   A sum of money equal to $882,000.00 in United States currency, and all interest and proceeds traceable thereto, representing the proceeds of the offense.

4. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred, or sold to, or deposited with a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of ▮▮▮▮▮▮▮▮ and **Pamela Sue Jennings**.

5. By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

All pursuant to 18 U.S.C. § 982(a)(1) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

10/16/19
_____
Date

JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____
NATHANIEL C. KUMMERFELD
ASSISTANT UNITED STATES ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | No. 6:19-CR-____ |
| ████████████████████████ | § | JUDGE _____ |
| PAMELA SUE JENNINGS (02) | § § | |

## NOTICE OF PENALTY

## COUNT 1

VIOLATION: Title 18, United States Code § 1956(h)
Conspiracy to Commit Money Laundering

PENALTY: Imprisonment of not more than twenty (20) years; the greater of a fine not to exceed $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

AO 442 (Rev. 11/11) Arrest Warrant        FID: 11000307

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>PAMELA SUE JENNINGS<br>HOUSTON, TEXAS 77022<br><br>*Defendant* | **SEALED**<br>Case No. 6:19cr56-02 |

RECEIVED
U.S. MARSHALS SERVICE
EASTERN DIST. OF TEXAS
TYLER DIVISION
2019 OCT 17 AM 10: 02

## ARREST WARRANT

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* __PAMELA SUE JENNINGS__,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:
COUNT 1: 18 USC 1956(h) - CONSPIRACY TO COMMIT MONEY LAUNDERING

Date: __10/17/2019__                                                       __David A. O'Toole__
                                                                        *Issuing officer's signature*

City and state: __Tyler, Texas__                                            David A. O'Toole, Clerk
                                                                        *Printed name and title*

### Return

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____

Date: _____
                                                                        *Arresting officer's signature*

                                                                        *Printed name and title*